IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHARLOTTE E. KILPATRICK,        )
                                )
                  Plaintiff,    )
                                )
vs.                             )        Case No. 07-1297-MLB
                                )
MICHAEL J. ASTRUE,              )
Commissioner of                 )
Social Security,                )
                                )
                  Defendant.    )
_____ )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

3

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On December 22, 2006, administrative law judge (ALJ) Michael
R. Dayton issued his decision (R. at 18-29).  Plaintiff alleged
disability beginning February 1, 2000 (R. at 18).  Plaintiff
meets the insured status requirements of the Social Security Act
through September 30, 2004 (R. at 20).  At step one, the ALJ

4

found that plaintiff has not engaged in substantial gainful activity since February 1, 2000, the alleged onset date (R. at 20).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, depressive disorder not otherwise specified (NOS), fibromyalgia, history of irritable bowel syndrome, hypothyroidism, anemia, asthma, migraines, and gastroesophageal reflux disease (R. at 21).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 21).  After determining plaintiff's RFC (R. at 22-23), the ALJ found at step four that plaintiff could perform past relevant work as a machine repair dispatcher (R. at 28-29).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 29).

**III.  Did the ALJ err in his RFC analysis?**

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.

SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);

<u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891

n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118,

1120 (10th Cir. 1993).

The ALJ described how the evidence supported his RFC

findings[1] as follows:

> In reaching a conclusion on claimant's
> residual functional capacity, the undersigned
> considered opinions of State Agency medical
> consultants who provided mental and physical
> functional capacity assessments (Exhibits
> B-12F and B-16F). After taking into account
> evidence received into the record subsequent
> to the State assessments, testimony at the
> hearing, observations of the claimant at the
> hearing, and the consultative opinion of Dr.
> Miller (Exhibit B-22F), the undersigned finds
> that State agency medical opinions are given
> substantial weight in regard to claimant's
> work limitations because they are consistent
> with the record as a whole and not
> contradicted by the opinion of any treating
> source. Therefore, opinions of State agency
> medical consultants have been provided
> substantial weight (20 C.F.R. 416.927(d) and

---

[1]The ALJ's RFC findings were as follows:

"After careful consideration of the entire record, the
undersigned finds that the claimant has the residual functional
capacity to perform work requiring lifting and/or carrying less
than 10 pounds occasionally and less than 10 pounds frequently,
sitting about 6 hours in an 8-hour workday, and standing and/or
walking at least 2 hours in an 8-hour workday. Pushing and
pulling limitations are the same as those for lifting and
carrying. The claimant is further restricted by occasional
limitations in climbing, balancing, kneeling, crouching,
crawling, and stooping and should avoid exposure to vibration and
hazards like machinery and heights.  Further, the claimant's
capacity is limited by her inability to interact appropriately
with the general public." (R. at 22-23).

(f); SSRs 96-2p, 96-6p.96-8p).

(R. at 28).

Although the ALJ gave "substantial weight" to the opinions of the state agency medical consultants, the ALJ failed to include in his RFC findings a number of limitations reflected by the state agency medical consultant regarding plaintiff's physical limitations.  The state agency consultant included in his assessment the opinions that plaintiff could not climb ropes, ladders and scaffolding, and could not crawl (R. at 397).  The consultant also opined that plaintiff should avoid concentrated exposure to extreme heat, cold, wetness, humidity, and fumes/odors/dusts/gases/poor ventilation, etc. (R. at 399).  However, without explanation, the ALJ failed to include these limitations in plaintiff's RFC.

The ALJ stated that he gave "substantial weight" to the opinions of the state agency consultants.  SSR 96-8p states that if the RFC assessment conflicts with an opinion from a medical source, the ALJ "must" explain why the opinion was not adopted.  However, as in Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1186-1187 (D. Kan. 2003), the ALJ never explained why he made findings inconsistent with the state agency assessment, the ALJ did not even acknowledge that he was rejecting portions of the assessment, and the ALJ failed to explain how the material inconsistencies in the medical

evidence were considered and resolved.  Thus, the ALJ failed to comply with SSR 96-8p.

The court would note that the ALJ's RFC findings parallel the RFC opinions set forth by Dr. Miller after he examined the plaintiff on June 20, 2006 (R. at 513-519).  However, the ALJ, although noting the opinions of Dr. Miller (R. at 25, 28), never indicated that he was giving controlling weight to the opinions of Dr. Miller.  If the ALJ did give greater or controlling weight to the opinions of Dr. Miller, the ALJ failed to discuss why he accorded greater weight to the opinions of Dr. Miller.  The ALJ failed to explain how the material inconsistencies between the opinions of Dr. Miller and the state agency medical consultant were considered and resolved, as required by SSR 96-8p.  It is not for the court to provide a rationale for the weight that the ALJ accorded to the various medical opinions.  Therefore, on remand, the ALJ will be required to fully comply with SSR 96-8p, including an explanation for how he considered inconsistencies in the evidence, and an explanation for why certain medical source opinions were not adopted.

**IV.  Did the ALJ err in his step four analysis?**

At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability

8

of the individual to return to the past occupation given his or
her residual functional capacity.  Henrie v. United States Dep't
of HHS, 13 F.3d 359, 361 (1993).  Thus, at the third or final
phase of the analysis, the ALJ determines whether the claimant
has the ability to meet the job demands found in phase two
despite the mental and/or physical limitations found in phase
one.  At each of these three phases, the ALJ must make specific
findings.  Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir.
2007); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).[2]

---

[2]In Winfrey, the court noted that the Secretary glossed over
the absence of the required ALJ findings by relying on the
testimony of the vocational expert (VE) that plaintiff could meet
the mental demands of his past relevant work, given his mental
limitations as found by the ALJ.  The court stated that this
practice of delegating to a VE many of the ALJ's fact finding
responsibilities at step four appears to be of increasing
prevalence and is to be discouraged.  The court went on to say as
follows:

> Requiring the ALJ to make specific findings
> on the record at each phase of the step four
> analysis provides for meaningful judicial
> review.  When, as here, the ALJ makes
> findings only about the claimant's
> limitations, and the remainder of the step
> four assessment takes place in the VE's head,
> we are left with nothing to review...a VE may
> supply information to the ALJ at step four
> about the demands of the claimant's past
> relevant work...[but] the VE's role in
> supplying vocational information at step four
> is much more limited than his role at step
> five...Therefore, while the ALJ may rely on
> information supplied by the VE at step four,
> the ALJ himself must make the required
> findings on the record, including his own
> evaluation of the claimant's ability to
> perform his past relevant work.

9

An ALJ can comply with these requirements if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis.  <u>Doyal v. Barnhart</u>, 331 F.3d 758, 760-761 (10th Cir. 2003).[3]  At the second phase of the step four analysis, the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work. When the ALJ essentially skips the second phase of the step four analysis by not making any findings regarding the physical and mental demands of claimant's past work, either as performed or as it is generally performed in the national economy, then the case

_____

<u>Winfrey</u>, 92 F.3d at 1025.

[3]The ALJ's findings in <u>Doyal</u> were as follows:

> The vocational expert testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as light and unskilled, and her past relevant work as an activities director would be classified as light and semiskilled.... The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

<u>Doyal</u>, 331 F.3d at 760.  The ALJ found that plaintiff could perform past relevant work as a housecleaner and a sewing machine operator.  331 F.3d at 761.  As noted above, the ALJ cited with approval the testimony of the vocational expert concerning the physical demands of the 2 past jobs which the ALJ found that the claimant could still perform.

shall be remanded in order for the ALJ to make the specific
factual findings regarding the demands of claimant's past
relevant work.  Clardy v. Barnhart, 2004 WL 737486 at *6 (D. Kan.
Apr. 5, 2004).

At step four, the ALJ made the following findings:

> The vocational expert, Robin Cook, Ph.D.,
> completed a work history evaluation (Exhibit
> B-16E) of claimant's prior work as
> a...machine repair dispatcher (DOT 239.367-
> 01[4]) which is semi-skilled sedentary
> work...At the hearing of October 30, 2006,
> Dr. Cook testified that the claimant's
> residual functional capacity was compatible
> with her past work as a machine repair
> dispatcher.
>
> In response to the undersigned's question,
> the vocational expert stated that her
> testimony was consistent with information
> contained in the Dictionary of Occupational
> Titles (DOT), Fourth Edition, Revised, U.S.
> Department of Labor, 1991 as required by SSR
> 00-4p. Other hypothetical questions were
> posed which incorporated varying greater
> and/or lesser levels of impairment; however,
> the undersigned is obligated to only adopt
> those limitations and commensurate jobs as
> are consistent with the record considered in
> its entirety.
>
> Based on occupational evidence including Dr.
> Cook's testimony and after comparing
> claimant's residual functional capacity with
> the physical and mental demands of this work,
> the undersigned concludes that the claimant
> is capable of performing past relevant work
> as a machine repair dispatcher.

(R. at 29).  Dr. Cook, the vocational expert (VE), testified that
the job of a machine repair dispatcher was classified by the DOT
as a semi-skilled sedentary level job (R. at 560).  The ALJ asked

11

the VE whether plaintiff could perform any past relevant work given her RFC limitations (R. at 590-592).  The VE testified that the only possible past job that plaintiff could perform would be a machine repair dispatcher.  He indicated that plaintiff's limitations on vibrations or hazards would reduce the number of those jobs that plaintiff could perform.  The VE noted that the DOT did not mention either vibrations or hazards as limitations for this job position (R. at 592).

The problem in this case is that the ALJ did not make findings of fact regarding the physical demands of plaintiff's past relevant work as a machine repair dispatcher; the ALJ also failed to make any findings of fact regarding any of the mental demands of plaintiff's past relevant work as a machine repair dispatcher.  At best, the ALJ did acknowledge that the VE indicated the position of machine repair dispatcher is sedentary work (R. at 29).  Sedentary work is defined as work that involves lifting no more than 10 pounds at a time, and is a job that involves sitting with walking and standing required occasionally. 20 C.F.R. § 404.1567(a) (2007 at 390).

However, the ALJ made no mention of any other physical demands required for the position of machine repair dispatcher (including postural or environmental demands); the ALJ also failed to mention any mental demands required for the position of machine repair dispatcher.  This is significant in light of the

12

fact that the ALJ included in plaintiff's RFC postural, environmental and mental limitations.  Furthermore, the VE only testified as to the exertional (as noted above) and environmental demands of the position (when she discussed the impact of the limitation on vibrations and hazards in performing the job); the VE never testified as to the postural or mental demands of the position (R. at 560-561, 589-596).

The ALJ in this case did not make the necessary findings regarding the physical and mental demands of plaintiff's past work as a machine repair dispatcher.  Unlike the case in Doyal, the ALJ did not quote the VE's testimony with approval in support of his own findings regarding the physical and mental demands of plaintiff's past work.  Given the fact that plaintiff's limitations included exertional, postural, environmental and mental limitations, it was critical for the ALJ to make findings as to the physical and mental demands of the machine repair dispatcher position.  However, the ALJ did not do so. Furthermore, it would have been impossible for the ALJ to quote the VE's testimony with approval in support of his findings at phase two regarding the postural or mental demands of the machine repair dispatcher position because the VE never testified regarding the postural or mental demands of that position.  The VE simply testified that a person with the RFC limitations set forth by the ALJ could perform her past relevant work as a

13

machine repair dispatcher after mentioning that it was a sedentary position and discussing the impact of limitations on vibrations and hazards (R. at 592-596).

The factual situation before the court in this case is nearly identical to the factual situation before the court in Hill v. Astrue, Case No. 07-1028-MLB (recommendation and report, Doc. 10 at 15-18, Sept. 7, 2007); affirmed by district court, Doc. 12, Nov. 1, 2007 and Doc. 20, Dec. 18, 2007).  The court reversed the decision of the Commissioner and remanded the case for further hearing because of defendant's failure to make the phase two findings required by SSR 82-62 and the case law in the 10th Circuit.

In the case of Frantz v. Astrue, 509 F.3d 1299, 1303-1304 (10th Cir. 2007), even though the ALJ determined that plaintiff had a severe mental impairment, the ALJ failed to develop any evidence or make findings regarding the mental demands of the claimant's past relevant work.  The VE testified that, based upon the claimant's RFC, claimant could return to her past work as previously performed and as generally performed in the national economy.  However, the VE did not testify about the mental demands of claimant's past relevant work, and the work history report the VE filled out said nothing about that issue.  The ALJ's conclusory statement that the exertional and non-exertional requirements of the past job were consistent with claimant's RFC

14

was held to be insufficient under <u>Winfrey</u> to discharge his duty
to make findings regarding the mental demands of claimant's past
relevant work.  The court also distinguished <u>Doyal</u> because,
unlike that case, there was no VE testimony and no evidence of
any kind to establish the mental demands of claimant's past
relevant work and thus no evidence that the claimant retained the
mental RFC to perform her past work.

As in <u>Frantz</u>, the ALJ in this case (Kilpatrick) failed to
make any findings regarding the physical and mental demands of
plaintiff's past job as a machine repair dispatcher.  There was
no VE testimony regarding the postural or mental demands of the
past job.  The ALJ simply made a conclusory statement that, after
comparing plaintiff's RFC with the physical and mental demands of
the past work, plaintiff could perform her past work (R. at 29).
The court finds that this conclusory statement by the ALJ is
insufficient under <u>Winfrey</u> to discharge the ALJ's duty to make
findings regarding the postural and mental demands of plaintiff's
past relevant work.  The ALJ did not quote the VE's testimony
with approval in support of his own findings at steps two and
three of the analysis.  In fact, there was no VE testimony, and
no evidence of any kind, to establish the postural or mental
demands of plaintiff's past relevant work and thus no evidence to
support a finding that plaintiff retains the mental and postural
RFC to work as a machine repair dispatcher.  Therefore, this case

shall be remanded in order for the ALJ to comply with SSR 82-62
and the related case law in the 10th Circuit, as set forth
above.[4] [5]

## V.  Did the ALJ err in his step two findings?

The burden of proof at step two is on the plaintiff.  See
Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the
claimant bears the burden of proof through step four of the
analysis).  A claimant's showing at step two that he or she has a
severe impairment has been described as "de minimis."  Hawkins v.
Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v.
Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of
medical severity").  A claimant need only be able to show at this
level that the impairment would have more than a minimal effect

---

[4]In Frantz, the court noted that the work history report the
VE filled out said nothing about the mental demands of the past
job.  509 F.3d at 1304.  In this case, the work history
evaluation of the machine repair dispatcher position only
mentions that it is a sedentary job; it says nothing about the
mental or postural demands of the job (R. at 234).


[5]This case is also distinguishable from the case of Campbell
v. Astrue, 525 F. Supp.2d 1256, 1264 (D. Kan. 2007), where the
ALJ incorporated by reference into her decision exhibits in the
record which described the physical and mental demands of
claimant's past jobs according to the Dictionary of Occupational
Titles (DOT), and claimant's testimony about those jobs.  The ALJ
in Campbell then compared her RFC findings with the exertional
and nonexertional demands of the past jobs as set forth in those
exhibits and claimant's testimony.  The ALJ in this case failed
to take administrative notice of the job information contained in
the DOT for the position of machine repair dispatcher.  See
Bowman v. Astrue, 511 F.3d 1270, 1273 (10th Cir. 2008).

on his or her ability to do basic work activities.[6]  Williams, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.   Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a), § 416.913(a).  Evidence from other medical sources, including

---

[6]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3.  Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

The ALJ found that plaintiff's severe impairments included depressive disorder (R. at 21).  The ALJ further found a lack of "medically acceptable evidence" that plaintiff has impairments of personality disorder or posttraumatic stress disorder (PTSD) (R. at 21).  Plaintiff contends that the ALJ erred by failing to consider at all the impairment of somatization disorder, and in his finding that the impairments of personality disorder and PTSD were not medically determinable impairments.

Dr. Liebenau's two consultative examinations, which were ordered by the defendant, mention the possibility of personality disorder, somatization disorder, and PTSD (R. at 348, 378).  Dr. Liebenau did not make a definitive diagnosis on any of the three possible impairments.  Furthermore, plaintiff has the burden of proving that these impairments would have more than a minimal effect on her ability to do basic work activities.  Plaintiff has failed to point to any evidence that any of these 3 possible impairments would have more than a minimal effect on her ability to do basic work activities.  The court also finds that the ALJ has adequately developed the record regarding these impairments. Absent any evidence that any of these possible mental impairments constitute a severe impairment, the court finds no error by the

18

ALJ at step two in his evaluation of plaintiff's mental impairments.

Plaintiff also argues that the ALJ's finding that plaintiff had a severe impairment of degenerative disc disease fails to fully take into account a MRI test from October 17, 2006 which showed that plaintiff had disc desiccation with a disc osteophyte complex at C5-6 with more impingement on the right. Plaintiff was diagnosed with cervical spondylosis and surgery was mentioned as a possibility (R. at 526, 528). However, defendant, in their response brief, failed to address this issue. The court cannot determine from the ALJ decision whether his step two findings take into account these medical findings in 2006. Therefore, on remand, this issue shall be addressed by the ALJ.

**VI. Did the ALJ err in his credibility analysis?**

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency. Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The ALJ found plaintiff not to be fully credible because of "significant inconsistencies in the record" (R. at 27). Specifically, the ALJ stated the following as part of his analysis that plaintiff's statements about her impairments were not substantiated by medical sources:

> It appears from the evidence that during 2002
> when claimant was diagnosed with fibromyalgia

> by Dr. Shaver, the diagnosis seemed contrary
> to X-rays that did not support rheumatoid
> arthritis as a diagnosis but later treatment
> notes kept referring to fibromyalgia as the
> diagnosis.

(R. at 28).  However, as courts have noted repeatedly, the

symptoms of fibromyalgia are entirely subjective, and there are

no laboratory tests to identify its presence or severity.

Gilbert v. Astrue, 231 Fed. Appx. 778, 783-784 (10th Cir. Apr.

11, 2007)(the lack of objective test findings noted by the ALJ is

not determinative of the severity of fibromyalgia); Brown v.

Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006);

Sommerville v. Astrue, D. Kan. No. 06-1110-JTM, report and

recommendation at 19-20, Doc. 33, July 2, 2007; affirmed by

district court, Doc. 34, July 24, 2007); Priest v. Barnhart, 302

F. Supp.2d 1205, 1213 (D. Kan. 2004); Munsinger v. Barnhart, D.

Kan. No. 01-1332-MLB, report and recommendation at 21, July 22,

2002; affirmed by district court Aug. 26, 2002);  Glenn v. Apfel,

102 F. Supp.2d 1252, 1258 (D. Kan. 2000); Anderson v. Apfel, 100

F. Supp.2d 1278, 1286 (D. Kan. 2000); Ward v. Apfel, 65 F.

Supp.2d 1208, 1213 (D. Kan. 1999).  Because fibromyalgia is

diagnosed by ruling out other diseases through medical testing,

negative test results or the absence of an objective medical test

to diagnose the condition cannot support a conclusion that a

claimant does not suffer from a potentially disabling condition.

Priest, 302 F. Supp.2d at 1213.

For this reason, the court finds that the ALJ erred when he indicated that the diagnosis of fibromyalgia seemed contrary to X-rays.  The fact that there are no objective tests to confirm fibromyalgia has no relevance to plaintiff's credibility.

The ALJ also stated that plaintiff's testimony that she could not lift 10 pounds was not substantiated by the evidence (R. at 27-28).  Plaintiff testified that she had difficulty picking up anything heavier than a 5 pound bag of sugar (R. at 546), and testified that Dr. Summerhouse told her not to lift more than 5-10 pounds (R. at 547).  However, Dr. Miller, following a consultative examination of the plaintiff, opined that plaintiff could only lift less than 10 pounds (R. at 516), and the ALJ's own RFC findings stated that plaintiff could lift or carry less than 10 pounds (R. at 22).  Plaintiff's testimony is in fact quite consistent with the findings of Dr. Miller and the ALJ's own RFC findings.  Therefore, her testimony on this point does not provide a valid basis to discount her credibility.

Another alleged inconsistency pointed out by the ALJ was that plaintiff reported problems walking, but that she had also indicated she walked for exercise (R. at 27).  Plaintiff testified to the ALJ that she could walk no more than 3 blocks at one time without having to stop because of fatigue and pain (R. at 543).  She later testified that she walks to her sister's house for exercise, which is about 1 ½ blocks (R. at 551).  The

22

court finds that these statements are not contradictory, and do not provide a valid basis for discounting her credibility.

The ALJ also discounted plaintiff's credibility because of allegedly contradictory information about left and right shoulder pain, and numbness in the hands and fingers (R. at 27). Plaintiff argues that the medical records do not show any contradiction (Doc. 8 at 28-30). The court would direct the ALJ on remand to review this medical evidence presented by the plaintiff when assessing plaintiff's credibility.

The ALJ also stated that plaintiff's statements "are not consistent with observations made by the undersigned" (R. at 28). However, the ALJ failed to indicate what he observed, or how those observations were not consistent with plaintiff's statements. Such conclusory statements leave the court with nothing to review, and do not serve as a valid basis to discount plaintiff's credibility.

In light of the numerous errors in the ALJ's analysis of plaintiff's credibility, as set forth above, the ALJ shall make new credibility findings when this case is remanded. The ALJ shall set forth the specific evidence he relies on in evaluating the plaintiff's credibility, with specific citations to the record, and shall explain and support with substantial evidence which part(s) of plaintiff's testimony he does not believe and why.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on May 29, 2008.


                         s/John Thomas Reid
                         JOHN THOMAS REID
                         United States Magistrate Judge